TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
DOMINIQUE CAAMANO (Cal. Bar No. 301810)
Assistant United States Attorney
General Crimes Section
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0492
     Facsimile: (213) 894-0141
     E-mail:    dominique.caamano@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 94-563-JAK |
| Plaintiff, | GOVERNMENT'S SUPPLEMENTAL OPPOSITION TO DEFENDANT'S SUPPLEMENTAL MOTION FOR SENTENCE REDUCTION UNDER 18 U.S.C. § 3582(c)(1)(A) (DKT. 249) |
| v. | |
| MARKHAM DAVID BOND, | |
| Defendant. | |

     Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorney Dominique Caamano, hereby files this supplemental response to defendant's supplemental motion for sentence reduction under 18 U.S.C. § 3582(c)(1)(A).  (See Dkt. 249.)  The government incorporates-by-reference its prior opposition to defendant's motion, see docket entry 239, and asks this Court to deny defendant's motion and all supplemental filings.

     This Response is based upon the attached memorandum of points

and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: March 9, 2021                  Respectfully submitted,

                                      TRACY L. WILKISON
                                      Acting United States Attorney

                                      BRANDON D. FOX
                                      Assistant United States Attorney
                                      Chief, Criminal Division


                                           /s/
                                      _____
                                      DOMINIQUE CAAMANO
                                      Assistant United States Attorney

                                      Attorneys for Plaintiff
                                      UNITED STATES OF AMERICA

# **TABLE OF CONTENTS**

I.   INTRODUCTION.................................................1

II.  STATEMENT OF FACTS..........................................2

    A.   Defendant's Crimes, Indictment, Trial and Sentence.......2

    B.   Incarceration and Projected Release Date.................2

    C.   Current Motion for Compassionate Release.................3

    D.   The Bureau of Prisons' and Congress's Response to COVID-19.................................................3

III. LEGAL FRAMEWORK FOR COMPASSIONATE RELEASE....................5

    A.   The Requirements of The Statute**Error! Bookmark not defined.**

IV.  ARGUMENT....................................................8

        1.   Defendant's continuing danger makes him ineligible for compassionate release.................8

    B.   Even If Defendant Were Otherwise Eligible, the 18 U.S.C. § 3553(a) Factors Do Not Support a Shorter Sentence................................................10

        1.   Stacked 924(c) charges do not warrant compassionate release.............................10

        2.   The other sentencing factors do not support release................................................12

V.   CONCLUSION..................................................15

# **TABLE OF AUTHORITIES**

**FEDERAL CASES**

Dillon v. United States,
      560 U.S. 817 (2010).......................................5, 6

United States v. Applewhite,
      No. 08-CR-60037,
      2020 WL 137452 (D. Or. Jan. 13, 2020).....................9, 10

United States v. Ayon-Nunez,
      No. 16-CR-130-DAD,
      2020 WL 704785 (E.D. Cal. Feb. 12, 2020)...................13

United States v. Buggs,
      2020 WL 7074267 (N.D. Ind. Dec. 3, 2020)..................11, 12

United States v. Chambliss,
      948 F.3d 691 (5th Cir. 2020)................................8

United States v. Colbert,
      No. 99-cr-80399,
      2020 WL 3529533 (E.D. Mich. June 30, 2020).................12

United States v. Dancy,
      EDCR 19-101-PA,
      ECF No. 76 (C.D. Cal. Aug. 18, 2020).......................8, 9

United States v. Elias,
      984 F.3d 516, 522 (6th Cir. 2021)..........................13

United States v. Gileno,
      448 F. Supp. 3d 183 (D. Conn. 2020)........................13

United States v. Gotti,
      33 F.Supp.3d 613, 619-20 (S.D.N.Y. 2020)....................9

United States v. Gunn,
      980 F.3d 1178 (7th Cir. 2020)...............................7

United States v. Hamilton,
      715 F.3d 328 (11th Cir. 2013)...............................7

United States v. Hernandez,
      EDCR 13-00122-VAP,
      ECF No. 121 (C.D. Cal. Aug. 19, 2020).......................7

United States v. McGrue,
      No. 08-CR-01318-ODW-1,
      2020 WL 4042777 (C.D. Cal. Jul. 19, 2020)...................7

United States v. Parker,
      No. :98-CR-00749-CAS-1,
      2020 WL 2572525 (C.D. Cal. May 21, 2020)....................7

**FEDERAL CASES (CONT'D)**

iv

United States v. Raia,
    954 F.3d 594 (3d Cir. 2020)....................................1

United States v. Rivernider,
    2019 WL 3816671 (D. Conn. 2019)..............................7

United States v. Ruffin,
    978 F.3d 1000 (6th Cir. 2020)..............................7, 8

United States v. Russo,
    No. 16-CR-441,
    2020 WL 1862294 (S.D.N.Y. Apr. 14, 2020)................14, 15

United States v. Shah,
    No. 10-70-CJC,
    ECF No. 329 (C.D. Cal. Mar. 30, 2020)........................13

United States v. Urso,
    No. 03-CR-1382,
    2019 WL 5423431 (E.D.N.Y. Oct. 23, 2019).....................9

United States v. Wade,
    2020 WL 1864906 (C.D. Cal. Apr. 13, 2020)...................10

United States v. Woolridge,
    2021 WL 415131 (E.D. LA 2021)...........................13, 14

**STATUTES**

18 U.S.C. § 3142(g)........................................6, 8, 9

18 U.S.C. § 3582(c).........................................passim

18 U.S.C. § 3553(a).........................................passim

28 U.S.C. § 994(t).........................................5, 6, 9

**REGULATIONS**

USSG § 1B1.13...............................................passim

**OTHER AUTHORITIES**

Federal Bureau of Prisons (BOP),
    Action Plan Phase V (Mar. 31, 2020), available at
    https://www.bop.gov/resources/news/20200331_covid19_action_
    plan_5.jsp....................................................4

BOP, Correcting Myths About BOP and COVID-19, available at
    https://www.bop.gov/coronavirus/docs/correcting_myths_and_m
    isinformation_bop_covid19.pdf.................................4

BOP, COVID-19 Coronavirus (updated daily at 12pm Pacific),
    available at https://www.bop.gov/coronavirus/index.jsp......4, 5

1

**OTHER AUTHORITIES (CONT'D)**

BOP, COVID-19 Vaccination Efforts Commended, available at
    https://www.bop.gov/resources/news/
    20210116 covid vaccine efforts commended.jsp...................4

BOP, Inmate Locator,
    available at https://www.bop.gov/inmateloc/...................2

BOP, Overview of COVID-19 Pandemic Response Plan, August 31,
    2020 available at https://www.bop.gov/foia/docs//
    Overview of COVID Pandemic Response Plan 08312020.pdf.........4

BOP, Statement from BOP Director (Mar. 26, 2020) (Statement from
    BOP Director), available at https://www.bop.gov/resources/
    news/20200326 statement from director.jsp....................4

BOP, Updates to BOP COVID-19 Action Plan: Inmate Movement
    (Mar. 19, 2020), available at https://www.bop.gov/
    resources/news/20200319 covid19 update.jsp...................4

Centers for Disease Control, Coronavirus Disease 2019 (COVID-
    19)--People Who Are At Higher Risk, available at
    https://www.cdc.gov/coronavirus/2019-ncov/need-extra-
    precautions/people-at-higher-risk.html...................6, 12

DOJ, Statement of BOP Director and Medical Director Before the
    Senate Committee on the Judiciary (Jun. 2, 2020),
    available at https://www.bop.gov/resources/news/pdfs/
    06022020 written statement.pdf...........................3, 4

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

**I.    INTRODUCTION**

3      Defendant Markham David Bond's ("defendant") motion for
4 compassionate release, including the recent supplemental filing, must
5 be denied.  He now cites to COVID-19 in seeking immediate <u>and</u>
6 <u>permanent</u> release from custody.  (Docket Entry ("Dkt.") 249 ("Suppl.
7 Motion").)  But neither statutory authority nor public health demands
8 his release.  The "mere existence of COVID-19 in society and the
9 possibility that it may spread to a particular prison alone cannot
10 independently justify compassionate release." <u>United States v. Raia</u>,
11 954 F.3d 594, 597 (3d Cir. 2020).  Defendant's logic endorses mass,
12 permanent release of convicted criminals <u>into</u> a pandemic, without
13 regard for the factors justifying their sentences or for the Bureau
14 of Prisons' (BOP's) efforts addressing COVID-19.  <u>First</u>, defendant
15 has not established that he is not a danger to the community.
16 <u>Second</u>, he has not established that the balance of the factors under
17 18 U.S.C. § 3553(a) weigh in his favor.

18      Defendant's request for release based on health concerns is not
19 compelling, in part, because the BOP started its vaccination program.
20 While the government cannot state when he will be vaccinated, the
21 program's existence weighs against a need to permanently reduce his
22 sentence.  Defendant also claims the government failed to argue
23 against his release based on health concerns; but the government did
24 not previously do so as this Court already disposed of those issues in
25 denying his prior release request.  (Dkt. 219 (order denying
26 defendant's compassionate release request based on health concerns);
27 <u>see also</u> Dkt. 239 at 11, n. 6.)  Finally, defendant continues
28 misreading Congress's amendment to the First Step Act of 2018 in

seeking release.  Congress did not provide for retroactive "unstacking" of section 924(c) sentences.  Rather than repeat facts and arguments in full here, the government incorporates by reference the Government's Opposition to Defendant's Motion for Compassionate Release (Dkt. 239).  In sum, defendant's request should be denied.

## II.  STATEMENT OF FACTS

### A.  Defendant's Crimes, Indictment, Trial and Sentence

For his conduct in two armed robberies, defendant is serving a sentence that includes a 240-month sentence on one count to be served consecutively to all other terms of imprisonment. (Id. at 6.)  In one robbery, defendant walked up to an armored-vehicle guard at a bank, "pointed the weapon in the guard's face," told the guard to turn around, drop to the floor, and assume a "spread eagle" position. (PSR ¶ 11.)  In another, defendant "pointed a black pistol at the guards and ordered them to get on the ground, head to head, face down." (PSR ¶ 16.)  As the government provided a more fulsome account of the robberies at issue in its prior briefing, the government incorporates by referenced its prior recitation of defendant's robberies of armored guards while pointing weapons at said guards. (See Dkt. No. 239 at 3-4.)  Similarly, the government incorporates by reference all facts related to his indictment, trial, and sentence. (See id. at 4-6.)

### B.  Incarceration and Projected Release Date

Defendant is currently incarcerated at FCI Lompoc with a projected release date of July 12, 2034.  See Federal Bureau of Prisons, Inmate Locator, available at https://www.bop.gov/inmateloc/ (last viewed March 9, 2021).  On May 8, 2020, defendant was diagnosed with COVID-19.  (Declaration of Dominique Caamano ISO Opposition to

1   Suppl. Mot. ("Caamano Decl.") Ex. AA at 019.)  Defendant was screened
2   for symptoms from May 8 to May 20, denied symptoms at each screening,
3   and on May 21, 2020, his symptoms resolved.  (Id. at 018-019.)

4       C.   **Current Motion for Compassionate Release**

5       Defendant submitted a request for compassionate release to the
6   warden in October 2019, which was denied on May 4, 2020.  (See Suppl.
7   Mot. at 8 (citing Dkt. 241 at 17-18, Dkt. 239-1 (under seal).)
8   Defendant filed a document titled "Compassionate Release" in November
9   2019 (the "November 2019 Motion").  (Dkt. 216.)  The November 2019
10  Motion sought compassionate release based on defendant's health
11  conditions, but this Court denied the request noting that defendant,
12  who cited to his hypertension as he does now, had not explained how
13  such a condition would "substantially diminish[] the ability of the
14  defendant to provide selfcare within the environment of a
15  correctional facility and from which he or she is not expected to
16  recover."  (Id.)  In February 2020, defendant filed another request
17  for compassionate release, but solely based on amendments to 18
18  U.S.C. § 924(c).  (Dkt. 218.)  The government filed an opposition in
19  June 2020.  (Dkt. 239.)  Now, defendant attempts to supplement his
20  compassionate-release request based on his chronic hypertension,
21  among other conditions and his BMI weight, magnified by the risk of
22  COVID-19.  He also continues arguing for release based on a First
23  Step Act amendment, which is not retroactive and therefore
24  inapplicable to defendant's sentence.

25      D.   **The Bureau of Prisons' and Congress's Response to COVID-19**

26      BOP has taken aggressive steps to protect inmates' health and to
27  mitigate COVID-19 spread.  DOJ, Statement of BOP Director and Medical
28  Director Before the Senate Committee on the Judiciary (Jun. 2, 2020)

3

("BOP Senate Testimony"), <u>available at</u> https://www.bop.gov/resources/
news/pdfs/06022020_written_statement.pdf.  Indeed, "maintaining
safety and security of BOP institutions is [the BOP's] highest
priority."  BOP, Updates to BOP COVID-19 Action Plan: Inmate Movement
(Mar. 19, 2020), available at https://www.bop.gov/resources/news/
20200319_covid19_update.jsp.  In January 2020, the BOP implemented a
modified COVID-19 Action Plan.  BOP, Action Plan Phase V (Mar. 31,
2020) ("Action Plan Phase V"), available at https://www.bop.gov/
resources/news/20200331_covid19_action_plan_5.jsp.  On August 31,
2020, the BOP adopted a comprehensive Pandemic Response Plan
applicable to all BOP facilities.  BOP, Overview of COVID-19 Pandemic
Response Plan, August 31, 2020 available at https://www.bop.gov/foia/
docs//Overview_of_COVID_Pandemic_Response_Plan_08312020.pdf
("Pandemic Response Plan").  The Pandemic Response Plan provides BOP
facilities with modules to prepare for, respond to, and recover from
outbreaks of COVID-19.  Id.  The BOP confirmed its approach aligns
with current CDC guidance for COVID management in correctional
facilities.  BOP, Correcting Myths About BOP and COVID-19, at 1,
available at https://www.bop.gov/coronavirus/docs/correcting_myths
_and_misinformation_bop_covid19.pdf.  COVID-19-positive inmates are
isolated from fellow inmates, receive medical treatment, and where
the institution cannot manage it, they are sent to the local
hospital.  Id. at 2.

     The BOP began vaccinating staff and inmates, prioritizing staff
to prevent transmission in and out of facilities.  Inmates are also
being vaccinated.  BOP, COVID-19 Vaccination Efforts Commended,
available at https://www.bop.gov/resources/news/20210116_
covid_vaccine_efforts_commended.jsp.  AS of March 8, 2021, the BOP

4

has administered 72,466 total doses of vaccines.  BOP, COVID-19
Coronavirus (updated daily at 12pm Pacific) ("BOP COVID-19 Update"),
available at https://www.bop.gov/coronavirus/index.jsp (last viewed
March 9, 2021).

These measures reflect BOP's commitment to protecting inmates
from COVID-19.  Although 634 inmates, including defendant, were
previously diagnosed with COVID-19 at defendant's facility, there are
currently zero inmates diagnosed with COVID-19 at defendant's facility
currently.  Id.  BOP "will continue to diligently support all persons
system-wide while doing everything [they] can . . . in mitigating the
spread of the virus."  BOP, Statement from BOP Director (Mar. 26,
2020) (Statement from BOP Director), available at https://www.bop.gov/
resources/news/20200326_statement_from_director.jsp.

**III. LEGAL FRAMEWORK FOR COMPASSIONATE RELEASE**

A district court generally "may not modify a term of imprisonment
once it has been imposed."  18 U.S.C. § 3582(c); see Dillon v. United
States, 560 U.S. 817, 824-25 (2010).  Compassionate release is one of
few exceptions to this rule, allowing a court to "reduce the term of
imprisonment" and to "impose a term of probation or supervised release
with or without conditions" not exceeding "the unserved portion of the
original" prison term.  18 U.S.C. § 3582(c)(1).

In addition, compassionate release is a drastic and permanent
relief subject to strict statutory conditions.  First, district
courts can evaluate a request for compassionate release only "after
the defendant has fully exhausted all administrative rights" before
the BOP.  18 U.S.C. § 3582(c).  The government agrees defendant has
met this requirement.

Second, in evaluating compassionate-release requests, courts must

5

1   follow both the statute and relevant, binding policy statements in the

2   Sentencing Guidelines.  See id.; 28 U.S.C. § 994(t); USSG § 1B1.13.

3   To be eligible for compassionate release, defendant must show: (1) the

4   existence of extraordinary and compelling reasons, within the meaning

5   of the statute and relevant policy statement; and (2) that he is not a

6   danger to the community.  18 U.S.C. § 3582(c)(1)(A).  Specifically,

7   the statute requires any reduction be "consistent with applicable

8   policy statements issued by the Sentencing Commission"--in this case,

9   USSG § 1B1.13.  Id.  As the Supreme Court recognized in Dillon, 560

10  U.S. at 827, because § 3582(c) permits a sentencing reduction only

11  where it is "consistent with applicable policy statements issued by

12  the Sentencing Commission," such policy statements are binding on a

13  court determining eligibility.  USSG § 1B1.13 explicitly defines the

14  "extraordinary and compelling reasons" that make a defendant eligible

15  for compassionate release.  See 28 U.S.C. § 994(t).  They include, as

16  relevant here, a serious medical condition "that substantially

17  diminishes the ability of the defendant to provide self-care within

18  the environment of a correctional facility and from which he or she is

19  not expected to recover."  USSG § 1B1.13 (other grounds omitted); USSG

20  § 1B1.13, comment. (n.1(A)-(B)).

21      Because defendant has a BMI of 30, he has a risk factor for

22  serious complications from COVID-19 that has been recognized by the

23  CDC.  See generally CDC, Coronavirus Disease 2019 (COVID-19)--People

24  Who Are At Higher Risk, available at https://www.cdc.gov/coronavirus/

25  2019-ncov/need-extra-precautions/people-at-higher-risk.html (last

26  accessed March 9, 2021).  Accordingly, defendant has arguably shown

27  that he has an "extraordinary and compelling" basis for compassionate

28  release.

Even if a defendant presents an "extraordinary and compelling" basis for release, however, the district court must also determine whether "the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." USSG § 1B1.13(2). As the government explains below, defendant has not met this requirement.[1] Defendant bears the burden to prove that he meets both of the requirements in USSG § 1B1.13, which he has not done. 18 U.S.C. § 3582(c)(1)(A); see United States v. McGrue, No. 08-CR-01318-ODW-1, 2020 WL 4042777, at *1 (C.D. Cal. Jul. 10, 2020) (stating that under § 3582(c)(1)(A)(i) a defendant bears the burden of establishing the existence of special circumstances permitting release); United States v. Hamilton, 715 F.3d 328, 337 (11th Cir. 2013) ("defendant, as the § 3582(c)(2) movant, bears the burden of establishing" eligibility).

Third, § 3583(c)(1)(A) requires the Court consider the "factors set forth in [§] 3553(a) to the extent that they are applicable." Even if the other requirements are met, courts should deny a motion for release if defendant does not establish that the balance of the

---

[1] As the Court is aware, there is a divide among the district courts on the issue whether USSG § 1B1.13 still is binding on the courts given certain amendments in the First Step Act. See, e.g., United States v. Ruffin, 978 F.3d 1000, 1006 (6th Cir. 2020). The government believes that that it does apply for reasons previously briefed, but the courts of appeals have disagreed. The Court need not reach this issue because the government does not contest that defendant has shown an "extraordinary and compelling" medical reason for release. While the danger requirement also is contained in § 1B1.13, the Court should exercise its discretion to have defendant meet his burden on this issue even if the Guidelines policy statement is not binding and only provides guidance to the Court. See, United States v. Gunn, 980 F.3d 1178, 1180 (7th Cir. 2020); United States v. Parker, No. 2:98-CR-00749-CAS-1, 2020 WL 2572525, at *8-9 (C.D. Cal. May 21, 2020); United States v. Rivernider, 2019 WL 3816671, at *2 (D. Conn. 2019). Similarly, danger to the community should be given definitive weight by the Court in its balancing of the 18 U.S.C. § 3553(a) factors.

applicable § 3553(a) factors weigh in favor of release.  See United
States v. Ruffin, 978 F.3d 1000, 1005 (6th Cir. 2020) ("The statute
says that the district court 'may' reduce a sentence if it finds the
first two requirements met; it does not say that the . . . court must
do so."); see also, United States v. Chambliss, 948 F.3d 691, 693-94
(5th Cir. 2020) (district court did not abuse discretion in denying
defendant's motion based on § 3553(a) balancing despite terminal
illness diagnosis); United States of America v. Hernandez, EDCR 13-
00122-VAP, ECF No. 121, at 7 (C.D. Cal. August 19, 2020) (Relevant
"§ 3553(a) factors weigh against reducing his sentence" even though
defendant showed he suffered from qualifying medical conditions.).

**IV.  ARGUMENT**

Defendant's claims must fail:  despite his medical condition of
a claimed BMI of 30, he is not eligible for compassionate release
because he remains a danger to the community.  Moreover, under the 18
U.S.C. § 3553(a) factors, the COVID-19 crisis does not justify a
permanent, irrevocable reduction in his sentence.

**A.  Defendant's continuing danger makes him ineligible for
compassionate release**

Serious illness is not the only requirement for compassionate-
release eligibility; a defendant must also demonstrate that he is
"not a danger to the safety of any other person or to the community."
USSG § 1B1.13(2).  Defendant cannot make that showing, and thus he
is ineligible for a reduced sentence.

Specifically, this Court may not reduce a defendant's sentence
unless it finds that "the defendant is not a danger to the safety of
any other person or to the community, as provided in 18 U.S.C.
§ 3142(g)."  USSG § 1B1.13; see United States v. Dancy, EDCR 19-101-

8

PA, ECF No. 76, at 4 (C.D. Cal. August 18, 2020) (defendant has ten criminal history points and remains a danger despite his medical ailments); accord United States v. Gotti, 433 F.Supp.3d 613, 619-20 (S.D.N.Y. 2020) (release was inappropriate regardless of extraordinary and compelling circumstances; defendant posed a continuing danger to the public); United States v. Applewhite, No. 08-CR-60037, 2020 WL 137452, at *2 (D. Or. Jan. 13, 2020) (denying compassionate release for seriously ill 80-year-oldinmate based on danger); United States v. Urso, No. 03-CR-1382, 2019 WL 5423431, at *3 (E.D.N.Y. Oct. 23, 2019) (defendant remains a danger based on the serious nature of his criminal conduct).

As the government noted in its incorporated-by-reference opposition (Dkt. 239), the record here precludes any such finding. Defendant has not been a model prisoner--indeed, he was disciplined for assault.  Defendant was on probation supervision for crimes involving possession with intent to distribute heroin and a prior bank robbery when he committed the instant offense, and the instant offense included the use of a firearm during and in relation to a crime of violence.  (Dkt. 239 at 7, 16-19.)  Physical violence, the use of firearms, and drug trafficking pose dangers to the community whether there is a pandemic or not.  Thus, nothing about the COVID-19 pandemic reduces defendant's danger.

Finally, defendant's purported rehabilitation alone does not satisfy his burden.  The standard for compassionate release is not just whether someone has performed well in prison.  To the contrary, "[p]ursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement."  USSG § 1B1.13, comment. (n.3).  Being a

9

"model inmate," which defendant was not, does not warrant an "abrupt

departure from [a defendant's] current sentence."  Applewhite, 2020

WL 137452, at *2.  Moreover, there is a significant difference

between doing well in prison and doing well in society.  This Court,

in evaluating the danger posed by defendant, cannot ignore the nature

and circumstances of the offense or his criminal history.  18 U.S.C.

§ 3142(g).  Those factors weigh against early release.  Given these

facts, defendant simply cannot be compared to the defendants in the

cases on which he relies.  For example, the defendant in United

States v. Wade, 2020 WL 1864906 at *1, *7 (C.D. Cal. Apr. 13, 2020),

had "limited" involvement in the robberies for which she was

convicted and the government acknowledged that her time in prison had

been "exemplary."  In contrast, defendant personally committed

multiple armed robberies and has had a string of disciplinary

incidents while in prison.

**B.  Even If Defendant Were Otherwise Eligible, the 18 U.S.C.
    § 3553(a) Factors Do Not Support a Shorter Sentence**

Any compassionate-release decision--even for a statutorily

eligible defendant--must also consider the factors under 18 U.S.C.

§ 3553(a).  See 18 U.S.C. § 3582(c)(1)(A)(i).  Those factors--which

the Court already considered when imposing defendant's sentence--do

not support his request for premature, permanent release.  They

support his original sentence.

1.  Stacked 924(c) charges do not warrant compassionate
    release

Defendant again argues that Section 403 of the First Step Act,

which changed the applicability of stacked sentences for convictions

under 18 U.S.C. § 924(c), constitutes an "extraordinary and

compelling circumstance[] warranting immediate release."  (Suppl.

10

Mot. at 6-8.)  The government continues to argue that it does not.
Although this specific issue is not crucial to defendant's motion
because he has presented an extraordinary and compelling basis for
release, the issue remains whether the Court should give the change
in the law much weight under the § 3553(a) analysis.  For many of the
same reasons stated in the government's earlier opposition to
defendant's request for release, the Court should not do so in this
case.  Congress did not intend for retroactive application of the
First Step Act.  (See generally Dkt. 239.)  Instead, in Section
403(b) of the First Step Act, Congress explicitly stated its contrary
intent: "This section, and the amendments made by this section, shall
apply to any offense that was committed before the date of enactment
of this Act, **if a sentence for the offense has not been imposed as of
such date of enactment**." (emphasis added).  Based on the plain
language above, and for the reasons previously stated, defendant's
argument fails.

Defendant cites district-court cases which justify sentence
reductions with the argument that while Congress rejected the
wholesale reduction of prior sentences under the First Step Act, it
intended for courts to apply retroactive leniency on a case-by-case
basis through compassionate release.  (See Suppl. Mot. at 7-8.)  With
respect to these courts, this argument is contradicted by the
convoluted nature of the district court's purported authority under
§ 3582(c)(1)(A) for this power (the lack of a quorum for the
Sentencing Commission) and the lack of any indication in the text of
the First Step Act that Congress wanted retroactive leniency doled
out on a case-by-case basis through compassionate release.  See,
e.g., United States v. Buggs, 2020 WL 7074267 (N.D. Ind. Dec. 3,

2020) ("This court rejects the position, accepted by some, that by simultaneously declining to make the amendments in § 403 retroactive, and also expanding the use of compassionate release, Congress contemplated that the courts would grant compassionate release based on the resulting sentencing disparities on a case-by-case basis."). Accordingly, this Court should not give weight to the First Step Act's change in the law as it balances the applicable § 3553(a) factors.

2. The other sentencing factors do not support release

The medical and COVID-19 related arguments that defendant has presented in his supplemental brief also do not weigh in favor of release. While defendant's BMI of 30 barely makes him eligible for release, the actual threat he faces from complications in a re-infection is remote based on current circumstances.[2] This hypothetical risk does not outweigh the danger he still poses and the other factors that weigh against release.

First, the facts of the case do not merit a reduction of defendant's sentence. Defendant participated in two-armed bank robberies in which firearms were aimed at armed guards. His sentence is appropriate in light of his conduct.

---

[2] While defendant also argues that his other conditions such as kidney disease, hypertension, and dental disorders make him medically eligible for release, Suppl. Mot. at 9-10, they do not. The CDC has not listed any of these conditions as making an individual at high risk for severe COVID-19 complications, and defendant has not put forth any information to suggest BOP cannot continue to manage these health conditions. See Centers for Disease Control, Coronavirus Disease 2019 (COVID-19)--People Who Are At Higher Risk, available at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html. Cf. United States v. Colbert, No. 99-cr-80399,2020 WL 3529533 (E.D. Mich. June 30, 2020) (denying compassionate release where defendant had hypertension, high cholesterol, and prostate cancer in the past).

1    _Second_, although defendant's claimed BMI of 30 plausibly puts

2    him at high risk of complications of COVID-19 such that he may

3    qualify under USSG § 1B1.13, he provides no evidence that the BOP is

4    unable to manage that condition--particularly given that there are

5    currently no reported COVID-19 infections in his designated facility.

6    _See_, _United States v. Elias_, 984 F.3d 516, 522 (6th Cir. 2021)

7    (affirming district court's ruling that the absence of active COVID-

8    19 cases at defendant's facility was a pertinent fact for the §

9    3553(a) analysis).  Moreover, defendant already tested positive for

10   COVID-19, but did not display symptoms, and his health records

11   suggest he does not have long-term complications.  (_See_ Exs. AA-CC.)

12   Thus, defendant's circumstances are not sufficiently extraordinary

13   and compelling to justify a modified sentence particularly

14   considering: defendant's facility currently has zero inmates

15   diagnosed with COVID-19; defendant himself already recovered from

16   COVID-19 within the facility; how the BOP has addressed COVID-19

17   generally; and the lack of specific concerns at FCI Lompoc.  Even

18   chronic conditions "that can be managed in prison are not a

19   sufficient basis for compassionate release."  _United States v. Ayon-_

20   _Nunez_, No. 16-cR-130-DAD, 2020 WL 704785, at *2-3 (E.D. Cal. Feb. 12,

21   2020).  Thus, the Court "cannot assume that the [BOP] will be unable

22   to manage [any] outbreak or adequately treat [defendant] should it

23   emerge at his correctional facility while he is still incarcerated."

24   _United States v. Gileno_, 448 F. Supp. 3d 183, 188 (D. Conn. 2020)

25   (denying compassionate-release motion in COVID-19-related case

26   involving a defendant who raised specific health concerns); _accord_

27   _United States v. Shah_, No. 10-70-CJC, ECF No. 329, at 3 (C.D. Cal.

28   March 30, 2020).  Indeed, there is nothing to suggest that defendant

1   would be safer outside of custody than in custody.  Defendant's

2   circumstances are--in the present pandemic--far closer to ordinary

3   than "extraordinary."  To grant defendant a sentence reduction based

4   such facts would not satisfy the 18 U.S.C. § 3553(a) factors; it

5   would result in a windfall.

6       Third, defendant's own medical and prison records reflect that

7   his health conditions are not themselves dire.  Defendant is not

8   currently at a BOP medical facility and requires only simple chronic

9   care. (Caamano Decl. Ex. BB.)  In addition, defendant claims as part

10  of his release plan that he would be able to work for a family member

11  "cleaning and maintaining" properties.  (Suppl. Mot. at 15.)  That

12  defendant is able to do physical work may also suggest his health

13  conditions are not so dire such that he is willing to be exposed to

14  COVID-19 in the community.

15      Fourth, BOP's vaccination program should reduce defendant's re-

16  infection risk.  Although it is not certain when defendant will have

17  an opportunity to be vaccinated, the vaccination of other staff and

18  inmates at defendant's facility should overtime decrease the

19  possibility that he will be re-infected.  "[A]s the availability of

20  the COVID-19 vaccine continues to increase in the coming months,

21  especially for individuals in correctional facilities, the risk posed

22  by COVID-19 to inmates will likely continue to decrease."  United

23  States v. Woolridge, 2021 WL 415131 at *5 (E.D. LA 2021).

24      Fifth, defendant already contracted and recovered from COVID-19.

25  Thus, as in United States v. Russo, 454 F.Supp.3d 270, 279 (S.D.N.Y.

26  2020), releasing defendant "will not provide him with the protection

27  sought by his motion: relief from the risk of contracting COVID-19."

28  Likewise, as in Russo, the BOP is managing defendant's condition

1    carefully; for example, he was screened for COVID-19 symptoms for 11

2    days after he tested positive.  (See Caamano Decl. Ex. AA at 018-019.)

3         At bottom, granting compassionate release would undermine the 18

4    U.S.C. § 3553(a) factors.  The law, and the specific facts of

5    defendant's case, neither demand nor endorse that result.

6    **V.    CONCLUSION**

7         The Court should deny the motion as set forth herein, as well as

8    in the government's prior briefing.  Finally, the government requests

9    that, if this Court ultimately grants relief, the government be given

10   an opportunity to brief appropriate conditions--including a release

11   plan, a mandatory quarantine, and a period of home confinement as a

12   condition of supervised release.  See 18 U.S.C. § 3582(c)(1)(A).

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28